IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BROTECH CORPORATION             :              CIVIL ACTION
t/a THE PUROLITE COMPANY and
PUROLITE INTERNATIONAL, LTD.    :

              v.                :

WHITE EAGLE INTERNATIONAL       :
TECHNOLOGIES GRP., INC., et al.             NO.  03-232

## MEMORANDUM ORDER

AND NOW, this 24th day of May, 2005, upon consideration of plaintiffs' Motion for the Imposition of Sanctions upon Defendants for Their Failure to Produce the Required Laboratory Notebooks of Russian Scientists Despite the Order of This Court (Doc. No. 93), defendants' opposition thereto, plaintiffs' Reply Brief, and defendants' opposition to plaintiffs' Motion to File a Reply Brief, and after oral argument on May 16, 2005, the court finds as follows:

## I.    The Court's September 13, 2004 Order

1.    The parties disagree on the interpretation of the court's September 13, 2004 Order granting plaintiffs' Motion for an Order Compelling Discovery of the Laboratory Notebooks of the Russian Scientists.  Plaintiffs contend that the Order required defendants to produce Laboratory Notebooks relating to the entire field of polymer chemistry.  See Pls.' Mot. for the Imposition of Sanctions at 14.  Hence, if there were Laboratory Notebooks addressing topics in the field of polymer chemistry unrelated to the issues, including but not limited to the

disputed patents, present in the instant litigation, plaintiffs contend that these Laboratory

Notebooks must be produced.

       2.      Defendants interpret the order more narrowly.  Defendants assert that the

Order defines the scope of the applicable production with reference to the specific agreements

between the parties and the Russian Scientists.  (Defs.' Opp. to Mot. at 11-12.)

       3.      In the Order, defendants were directed to produce "each and every

Laboratory Notebook or portion thereof" which directly or indirectly relates to:

> (I)  "the field of polymer chemistry", which field encompasses "the creation and development of new products in the field of polymer chemistry including, but not limited, to the development of polymers", as set forth in the Consulting Agreement of November 13, 1997 signed by Defendants and Dr. Davankov, attached to Plaintiffs' Third Amended Complaint at Exhibit "F";

> (ii)  "the field of hyper-crosslinked polymeric networks and ion exchange resins", and "polymeric absorbents ion-exchange resins and catalysts, and styrene co-polymer beads, for absorbent column packing", as set forth in the Cooperation and Consulting Agreements of March 27, 1992, and May 23, 1994, signed by Plaintiffs and Dr. Davankov, and Plaintiffs and INEOS, by Dr. Davankov, attached to Plaintiffs' Third Amended Complaint at Exhibits "B" and "C"; and

> (iii)  if not otherwise covered in subparagraphs (I) and (ii) above, any and/or each of the Patents in suit respecting with [sic] Plaintiffs assert a status as a co-owner or co-inventors.

(Order, 9/13/04, at ¶1(a).)[1]

---

    [1]    The documents referenced in the court's order do not refer to the unlimited field of polymer chemistry.  The Cooperation Agreements between Purolite and INEOS dated March 27, 1992 and May 23, 1994, state that INEOS has experience in "converting copolymers to materials of the hyper-crosslinked swellable structure, which could be used as adsorbent column packing."  See Mem. Supp. Mot. Exs. A and C.  The Consultancy Agreement between Dr. Davankov and Purolite dated May 23, 1994, states that Dr. Davankov "is pleased to continue serving Purolite as an exclusive consultant in the field of hyper-crosslinked polymer networks and ion exchange  resins."  Id. Ex. D.  In the Consulting Agreement between Dr. Davankov and Advanced Renal Technologies dated November 13, 1997, Dr. Davankov acknowledges that he is an expert in the "field of polymer chemistry," which in the Consulting Agreement is a defined

4.      After carefully examining the court's Order and the parties submissions, the court finds that the scope of production is not the entire unlimited field of "polymer chemistry," but the field as limited by the agreements and the patents at issue in this litigation.

## II.      <u>Laboratory Notebooks Produced</u>

5.      At issue are Laboratory Notebooks created by four Russian Scientists: Vadim Davankov, Dzidra Tur, Maria Tsyurupa, and Ludmila Pavlova.

6.      At the oral argument, the parties agreed that Dr. Davankov did not create and maintain Laboratory Notebooks, hence, there are no Davankov Notebooks for defendants to produce.  <u>See</u> <u>also</u> Davankov Declaration ¶ 7.

7.      Defendants contend that Dzidra Tur made only one limited contribution to the project at issue and did not create and maintain a Laboratory Notebook responsive to the document request.  <u>Id.</u> ¶10.  Defs.' Opp. to Mot. at 2, 16.

8.      Defendants have produced all of the Laboratory Notebooks of Maria Tsyurupa.  (Ms. Tsyurupa left the Laboratory Notebooks addressing her work at plaintiff, Purolite, with Purolite.)  Davankov Declaration ¶¶ 16-17; Defs.' Opp. to Mot. at 2, 16-18.

---

term "Field."  <u>Id.</u> Ex. E.  The Agreement then states that Advanced Renal Technologies engaged Dr. Davankov to "perform certain professional consulting services as hereinafter defined in Field," and Dr. Davankov was retained to "advise and assist . . . in the creation of new products in the Field including, but not limited to, the development of polymers ('ARTIFICIAL KIDNEY')."  The Consulting Agreement further states that Dr. Davankov shall be "responsible for the creation and development of Project" within a certain tine schedule.  The Consulting Agreement does not define the term "Project."  Under these agreements, the work to be performed by Dr. Davankov and/or INEOS is limited to certain areas or projects in the field of polymer chemistry.

9.      The remaining Russian Scientist, Ludmila Pavlova, did not begin working with the other Russian Scientists until 1994, Davankov Declaration ¶4, and her Laboratory Notebooks since that time have been produced.  See Defs.' Opp. to Mot. at 2, 16-18.

10.     In order to produce the relevant pages of the Laboratory Notebooks to plaintiffs, Davankov hand carried certain Laboratory Notebooks, Notebooks numbered ten through fourteen, from Moscow to Paris to mail them to defense counsel.  Davankov Declaration ¶¶17-18.  The Laboratory Notebooks at issue do not belong to Dr. Davankov or the other Russian Scientists.  The Laboratory Notebooks are the property of the A.N. Nesmeyanov Institute of Element-Organic Compounds ("INEOS"), an institute of the Russian Academy of Sciences.  Id. ¶¶1, 8, 14, 17, 18, 20, 21.

11.     In paragraph nineteen of his Declaration, Dr. Davankov stated:  "I have reached the limit of the notebooks that I can provide.  I believe that Purolite has now been provided with all of the notebooks relating to the RenalTech patents involved in the lawsuit." Davankov Declaration ¶19.

## III.    Plaintiffs' Contentions

12.     Notwithstanding paragraph nineteen of Davankov's Declaration, plaintiffs contend that paragraph twenty of the Declaration proves that there are more notebooks relating to the field of polymer chemistry that defendants have failed to produce in violation of paragraph 1(a) of the court's September 13, 2004 Order.  In paragraph twenty of his Declaration, Dr. Davankov stated:

> We certainly have notebooks that contain results of investigation of properties of many different polymers, including those developed together with Purolite and then manufactured by Purolite.  But these results are already published in open

4

scientific literature (see attached), as this was required from me by the
Consultancy Agreement with Purolite.  However, my co-workers and I do not own
the notebooks and RenalTech does not own them.  Even if RenalTech told me to
give its lawyers more notebooks, or even if the court ordered it, I could not do so.
The notebooks are INEOS', not mine.

Davankov Declaration ¶ 20.

13.     In this paragraph, Dr. Davankov admits that there are Laboratory

Notebooks addressing topics in the field of polymer chemistry, but that the subject matters of

those Notebooks have been published.  Dr. Davankov provides a list of the relevant publications.

14.     At the oral argument, plaintiffs also contended that they are entitled to all

Laboratory Notebooks of the Russian Scientists if they address any topic under the broad

category of "polymer chemistry."  As stated above, this court does not interpret the court's

September 13, 2004 Order so broadly.  The court's Order limited the scope of production to

matters related to the specific agreements and patents at issue in the instant litigation.  In

paragraph nineteen of his Declaration, Dr. Davankov specifically stated that plaintiffs have "all

of the notebooks relating to the RenalTech patents involved in the lawsuit."  Id.  The court finds

that defendants complied with the court's September 13, 2004 Order.

15.     At the oral argument, plaintiffs further argued that since defendants

provided portions of Laboratory Notebooks numbered ten through fourteen, they could provide

the same for Laboratory Notebooks numbered one through nine.  This statement raises two

concerns.  First, Dr. Davankov stated in his Declaration that all Laboratory Notebooks, or

portions thereof, relevant to this litigation have been produced.  Drs. Davankov and Tur have no

Notebooks to produce.  All of Dr. Tsyurupa's Notebooks have been produced, except for those

she left at plaintiffs' facility which are in plaintiffs' possession.  All of Dr. Pavlova's Notebooks

since she began working with the Russian Scientists in 1994 have been produced.  Defendants

are under no obligation to produce irrelevant documents.  Second, plaintiffs minimize the

burdens and risks borne by Dr. Davankov in producing the responsive Laboratory Notebooks.

Dr. Davankov removed the Notebooks from INEOS' premises in Russia, personally hand carried

them to Paris where he then forwarded them to defense counsel.  He candidly admitted that these

are not his Notebooks, and that they belong to his employer, INEOS.  The burdens and risks

undertaken by Dr. Davankov to comply with the court's order on behalf of the defendants were

significant, and he need not bear those burdens and risks further merely to provide documents

irrelevant to the issues at hand.[2]

For the reasons stated above, it is hereby **ORDERED** that plaintiffs' Motion for

the Imposition of Sanctions is **DENIED**.

BY THE COURT:

_____
THOMAS J. RUETER
United States Magistrate Judge

---

[2]   Under Fed. R. Civ. P. 34(a), a party is required to produce documents only if they "are in the possession, custody or control" of that party.  "In the Rule 34 context, control is defined as the legal right to obtain required documents on demand."  Mercy Catholic Med. Center v. Thompson, 380 F.3d 142, 160 (3d Cir. 2004).  It is apparent from Dr. Davankov's affidavit that neither he nor defendants have the legal right to obtain additional documents from INEOS.  This is an additional reason why plaintiffs' motion for sanctions must be denied.